**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No. 1:25-cv-20405-JB**

JONATHAN LOPEZ,

Plaintiff,

v.

CHASE HERRO,

Defendant.

**MOTION TO DISMISS AMENDED COMPLAINT**

## I. INTRODUCTION

Defendant Chase Herro ("Herro") moves to dismiss Plaintiff Jonathan Lopez's ("Lopez") Amended Complaint (ECF No. 42) (the "Amended Complaint") under Federal Rule of Civil Procedure 12(b)(6).

On December 2, 2025, the Court dismissed Lopez's Complaint (ECF No. 1) (the "Initial Complaint") and gave him a clear roadmap for amendment. *See* Order on Motion to Compel Arbitration, or in the Alternative, Motion to Dismiss the Complaint (ECF No. 39) (the "Order"). The Court held that Lopez's negligent misrepresentation and fraud claims (Counts I and III) sound in fraud, are governed by Rule 9(b), and failed because Lopez did not "specify which statements constitute fraud and which statements [he] reasonably relied upon," did not plead facts supporting an intent to induce reliance, and did not allege facts showing that Herro knew—or should have known—any of the supposed statements was false. Order at 17–18.

The Court likewise dismissed Plaintiff's breach-of-fiduciary-duty claim, explaining that—even assuming a fiduciary relationship was adequately alleged—the claim failed because the proximate-cause allegations were conclusory and the pleading was "unclear as to what the breach was, and how the damages … were a foreseeable and natural consequence of that breach." Order at 20.

Lopez's Amended Complaint does not cure these defects. It recycles the same generalized "liquidity/security" narrative, swaps in buzzwords like "intentionally lied," and tries to paper over the Court's causation and intent rulings by adding a sensational new allegation that the July 2024

flash-loan attack was "orchestrated directly" by Herro—without pleading any concrete facts necessary to make that accusation, or any of his claims, plausible.[1]

For the reasons more fully explained below, this case should be dismissed with prejudice.

## II. BACKGROUND

### A. Procedural Background

This case arises from a dispute between Lopez and Herro regarding alleged losses suffered by Plaintiff in connection with Plaintiff's use of the Dough Finance cryptocurrency platform ("Dough"). The relevant background of this dispute is summarized below.

In May 2024, Plaintiff supposedly deposited $1 million worth of Ethereum cryptocurrency ("ETH") on Dough, a decentralized financial platform that Plaintiff alleges was founded by Herro. Am. Compl. at ¶ 67. Over the next two months, Plaintiff used Dough, including the platform's high-risk "looping" feature, which allows users to repeatedly borrow and redeposit assets as collateral to maximize yield or leverage, increasing the risk of liquidation if the collateral value drops. *See, e.g.*, *id.* at ¶ 38. In July 2024, Dough experienced a "flash loan" attack by a computer hacker, resulting in the loss of Plaintiff's ETH. *Id.* at ¶ 54. In January 2025, Plaintiff filed this action against Herro, asserting claims for fraud, negligent misrepresentation, breach of fiduciary duty, and violations of the Florida Securities and Investor Protection Act ("FSIPA"). *See* Initial Complaint. Herro moved to dismiss the Initial Complaint on February 19, 2025. *See* Motion to Compel Arbitration, or, in the Alternative Motion to Dismiss (ECF No. 10).

On December 2, 2025, this Court dismissed the Initial Complaint without prejudice. *See generally,* the Order. The Court held that Lopez's negligent misrepresentation and fraud claims (Counts I and III) were subject to Rule 9(b) and that the Initial Complaint failed to "specify which

---

[1] As discussed below, these allegations are demonstrably false and are subject to a pending inquiry and Safe Harbor Letter under Federal Rule of Civil Procedure 11.

statements constitute fraud and which statements Lopez reasonably relied upon in making his decision to invest," lacked allegations of intent to induce reliance, and lacked allegations supporting that Herro should have known that any statements he made were false when made. Order at 17-18. The Court also held that Lopez's breach of fiduciary duty claim (Count II) failed because the proximate cause allegations were conclusory and the pleading was "unclear as to what the breach was, and how the damages that resulted from Herro's breach of fiduciary duty were a foreseeable and natural consequence of that breach." Order at 20. The Court also dismissed Plaintiff's FSIPA count. *Id.* at 22. Plaintiff filed the Amended Complaint on December 12, 2025.

### B. The Amended Complaint

Substantively, the Amended Complaint largely repackages the Initial Complaint and suffers from the same plausibility defects discussed below—defects that this Court found warranted dismissal when considering Herro's previous motion to dismiss. The overlap is so extensive, and the added factual allegations so limited, that Defendant provides a redline for the Court's convenience showing what changed (and what did not). *See* Ex. A. In practical terms, the amendment boils down to two high-level additions.

*First*, instead of *quoting* texts and audio calls—as he did in his Initial Complaint—Lopez pastes images of ostensibly relevant text messages and audio recordings between Lopez and Herro into the body of the Amended Complaint. *Compare* Initial Complaint at ¶¶ 31-35 *with* Amended Complaint at ¶¶ 31-35. Critically, these are not new text messages or audio recordings. The images that now sit in the body of the Amended Complaint are representative of texts/audio recordings that were previously quoted in the Initial Complaint or attached as exhibits to his opposition to the motion to dismiss response. In essence, Lopez simply replaced the text of the Initial Complaint with pictures, meaning that the Court has already analyzed this language in dismissing his claims.

*See* Order at 2 (analyzing the same audio recording/text messages that form the basis of the Amended Complaint).

*Second*, Plaintiff includes in the Amended Complaint a series of previously unpled and entirely unsupported accusations that Herro orchestrated, directed, manipulated code to enable, and/or profited from the "flash loan" attack. *See, e.g.,* Am. Compl. ¶¶ 56, 58, 60, 67, 69, 85(b), 93, 100, 114–116. For example, the amended pleading alleges that the attack was a "ruse … so that [Herro] could take it for himself," (¶ 56); that Herro was "directly responsible" and "directed the attack" for his "own personal gain" (¶ 58); that Herro "altered or manipulated" Dough Finance's code "before, during, and after" the hack for his "personal benefit" (¶ 60); that Herro personally "liquidat[ed]" platform assets to another wallet he owned/controlled (¶ 67); that the "flash loan" attack was "orchestrated" by Herro (¶ 85); and that Herro "siphoned all crypto assets" in a purported flash loan attack and used the assets to fund a new exchange (¶ 100). These are serious allegations accusing Herro of intentional misconduct tantamount to theft; a theory of wronging that was ***completely absent*** in the Initial Complaint. Moreover, as further described below, they provide no evidentiary value because they are conclusory allegations that are not entitled to the presumption of truth.

At its core, the Amended Complaint does nothing to cure the defects that this Court identified when it dismissed the same claims (on the same evidence) in the Initial Complaint.

### C. Rule 11 Inquiry

Lopez's accusations that Herro orchestrated the hack have virtually no evidentiary support in the Amended Complaint, and, as discussed below, even the perfunctory evidence Plaintiff and his counsel do provide falls well short of compliance with Rule 11. Because of this, Herro requested on December 17, 2025 via a letter that the Amended Complaint be amended to remove these accusations. Because Lopez did not indicate he would amend as of the time of filing this

Motion, on January 7, Herro sent Plaintiff a Rule 11 Safe Harbor Letter and Draft Rule 11 Motion demanding the allegations be removed.

## III. THE COURT SHOULD DISMISS THE THREE REMAINING CLAIMS WITH PREJUDICE.

### A. Legal Standard

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (alteration added) (citing *Twombly*, 550 U.S. at 556).

This pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555. On a motion to dismiss, well-pled factual allegations may be presumed true, but unsupported allegations and conclusions of law will not benefit from the presumption. *Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Further, Rule 9(b)'s heightened pleading standard provides the framework for analyzing Plaintiff's claims for negligent misrepresentation (Count I) and fraud (Count III). *See Ceithaml v. Celebrity Cruises, Inc.*, 207 F. Supp. 3d 1345, 1352-3 (S.D. Fla. 2016) (citing *Garfield v. NDC Health Corp.*, 466 F. 3d 1255, 1262 (11th Cir. 2006) (applying FRCP 9(b) standard to negligent misrepresentation).

Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), a complaint must allege: "(1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud." *FindWhat Investor Frp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2001). Additionally, Rule 9(b)'s heightened pleading standard requires that the plaintiff "allege with particularity the manner in which they relied on the defendants' statements." *Fernau v. Enchante Beauty Prod., Inc.*, 847 F. App'x 612, 622 (11th Cir. 2021) (citation omitted).

**B. Lopez's Previously Unpled "Herro Orchestrated the Hack" Allegations Are Not Entitled to the Presumption of Truth.**

The overwhelming majority of Plaintiff's new allegations are little more than accusations (without any factual basis) that Herro was responsible for the "flash loan" attack. For example, Plaintiff states that "[u]pon information and belief, the supposed 'flash loan' attack was actually Chase personaly (sic) liquidating and directing the platform's assets from Dough Finance (an exchange Chase built, founded, and controlled) to another wallet owned and/or controlled by Chase." Am. Compl. ¶ 67. Plaintiff also simply asserts, on multiple occasions, that the flash loan attack "was orchestrated directly by Chase" (*see e.g., id.* ¶ 93) or that "[Herro] siphoned all crypto assets from Dough Finance . . . in a purported 'flash loan' attack" (*id.* ¶ 100). These conclusory accusations are presented with no evidentiary support whatsoever. Instead of providing factual details such as wallet addresses, transactions, timing, where the funds went, whether Herro controls the stolen funds, whether Herro had the technical means to carry out the hack, any witness

statements tying Herro to the attack, or any other identified source of knowledge, Plaintiff merely asserts that Herro hacked the cryptocurrency platform that he allegedly founded and operates.

Because these new allegations are actually just "conclusory" accusations untethered from any facts, they are not entitled to a "presumption of truth." *Iqbal,* 556 U.S. at 681 (finding that allegation that Ashcroft was "principal architect" of discriminatory policy and Mueller was "instrumental" in executing discriminatory policy were not entitled to presumption of truth because they were conclusory); *Aprigliano v. American Honda Motor Co., Inc.,* 979 F.Supp.2d 1331, 1343 (S.D. Fla. Oct. 28, 2013) (discrediting plaintiff's conclusory allegation that defendant car company "failed to disclose and concealed the true nature of a defect" where there were no specifics alleged of the underlying scheme). Similarly, any of these new allegations that rely on Plaintiff's "information and belief" are also without evidentiary value, as they do not benefit from a presumption of truth because they do not include any facts supporting Plaintiff's information and belief—again, they are merely accusations against Herro. *See Smith v. City of Sumiton*, 578 F. App'x 933, 936 (11th Cir. 2014) ("[F]or purposes of a Rule 12(b)(6) motion to dismiss, we do not have to take as true allegations based merely 'upon information and belief'[.]" (*quoting Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013))); *see also In re Zantac (Ranitidine) Prod. Liab. Litig.*, 548 F. Supp. 3d 1225, 1233 (S.D. Fla. 2021) (Rosenberg, J.) ("But the court need not accept as true allegations upon information and belief that lack sufficient facts to make the allegations plausible." (cleaned up)). These allegations, therefore, provide no support for Plaintiff's theory that Herro orchestrated the July 2024 attack in order to steal Plaintiff's ETH, and should not be used as indicia that Lopez's renewed claims for fraud, negligent misrepresentation, or breach of fiduciary duty are plausible.

Plaintiff does cite to two online articles which purportedly support the following allegation: there is a "clear indication" that the money lost in the flash loan attack was used by Herro to "co-found[] and secure[] a large equity stake in World Liberty Financial." Am. Compl. ¶¶ 68-69. A review of the websites, however, shows that this is simply not true.[2] The first website—a Fortune.com article focused on President Donald Trump's "crypto empire"—makes only a single, passing, reference to Herro. *See Here Are the 4 Pillars of Trump's Growing Crypto Empire and the Key People Running the Show,* Fortune (Oct. 23, 2025), https://fortune.com/2025/10/23/here-are-the-4-pillars-of-trumps-growing-crypto-empire-and-the-key-peoplerunning-the-show/ (last visited Jan. 5, 2026). It notes that "[a]ccording to [*Fortune* journalist Ben] Weiss, the day-to-day operations of World Liberty Financial are handled by a pair of longtime crypto veterans named Zak Folkman and Chase Herro." *Id.* The second article is published on TheBlock.co and is similarly focused on President Trump and his family. *See Trump Family Now Controls at Least 60% Stake Over WorldLiberty Financial Through New Holding Company,* The Block, https://www.theblock.co/post/348917/trump-family-now-controls-at-least-60-stake-over-worldliberty-financial-through-new-holding-company-reuters (last visited Jan. 5, 2026). Neither article provides material information on Herro, nor do they even cursorily mention Herro's "stake amount in [World Liberty Financial]." Am. Compl. ¶ 69. It is therefore wholly unreasonable to rely on these sources as a "clear indication" that Herro orchestrated the flash loan attack and used the proceeds to "co-found[] and secure[] a large equity stake in World Liberty Financial." Am. Compl. ¶¶ 68-69.

---

[2] The Court may consider the websites under the incorporation-by-reference doctrine. *See, e.g.*, *Luke v. Gulley*, 975 F.3d 1140, 1144 (11th Cir. 2020).

These serious allegations—largely the only new allegations Plaintiff included in the Amended Complaint—were not pled in the Initial Complaint and are not the product of any information exchange between the parties. Nor has Plaintiff given *any* indication that they are the result of an inquiry that he or his counsel conducted prior to filing the Amended Complaint. Rather, it seems clear that these allegations are nothing more than an attempt by Plaintiff to hide the significant deficiencies flagged by this Court when it dismissed the Initial Complaint. For example, this Court dismissed Plaintiff's breach of fiduciary duty claim because Plaintiff failed to plead a breach by Herro. *See* Order at 20 ("The Complaint, and Lopez's Response are unclear as to what the breach was . . . ."). In the Amended Complaint, the ***only*** added allegation regarding breach is that "Chase breached his fiduciary duties of honesty, loyalty, care, and compliance with the applicable securities laws when he siphoned all crypto assets from Dough Finance…in a purported 'flash loan' attack and utilized said assets to fund a new exchange." Am. Compl. ¶ 100. In other words, the sufficiency of Plaintiff's renewed claim for breach of fiduciary duty relies entirely on Plaintiff's unsupported (and uninvestigated) accusations that Herro was behind the "flash loan" attack. Similar examples of Plaintiff's reliance on these conclusory accusations appear throughout the Amended Complaint. *See, e.g.,* Am. Compl. ¶¶ 56, 58, 60, 67, 69, 85(b), 93, 100, 114–116

In sum, when analyzing the Amended Complaint under Rule 12(b)(6), the Court should not credit Plaintiff's allegations that Herro orchestrated the "flash loan" attack because the "conclusory nature of [those] allegations … disentitles them to a presumption of truth." *Iqbal,* 556 U.S. at 681. Because Plaintiff's renewed claims rely on these conclusory accusations, removing them renders the Amended Complaint little more than a repackaged version of the Initial Complaint. Accordingly, for the reasons discussed in more detail below, the Amended Complaint should be dismissed in its entirety.

**C. Plaintiff's Fraud (Count I) and Negligent Misrepresentation (Count III) Claims Still Fail and Should be Dismissed with Prejudice.**

In the Order, the Court dismissed Counts I and III without prejudice. Order at 17-18. The Court noted that the Initial Complaint failed to "specify which statements constitute fraud and which statements Lopez reasonably relied upon in making his decision to invest." *Id.* Further, the Court held that "factual allegations" as opposed to conclusions "pertaining to Herro's intention to induce Lopez to rely on such misrepresentations are absent from the complaint, as are factual allegations" as opposed to conclusions, "that would support a finding that Herro should have known that such statements were false." *Id.* at 18. The Court dismissed both the fraud and negligent misrepresentation claims based on the above deficiencies. *Id.* The Amended Complaint suffers from the same flaws.

*i. Lopez Again Fails to Plead His Fraud and Negligent Misrepresentation Claims with Particularly as Required by Federal Rule of Civil Procedure 9(b).*

A plaintiff bringing a claim sounding in fraud—such as Counts I and III—is "required to plead the 'who, what, when, where, and how' pertaining to the underlying fraud." *Cardenas v. Toyota Motor Corp.*, 418 F. Supp. 3d 1090, 1098 (S.D. Fla. 2019). Lopez's claims were dismissed for failure to meet this standard in his Initial Complaint, and the same result is appropriate for the Amended Complaint. When dismissing Counts I and III the first time around, this Court agreed with Herro that "citing to 'vague and ambiguous text messages'" does not sufficiently allege when and how the statements were made, how they misled Lopez, or how such statements were false." Order at 17. That logic applies equally to the Amended Complaint because Plaintiff merely supplemented the text of the "vague and ambiguous text messages" with pictures of the "vague and ambiguous text messages." *Compare* Initial Complaint at ¶¶ 31-35 *with* Amended Complaint at ¶¶ 31-35 (showing the mass of communications Lopez bases his claims on are substantially similar); *see also* Ex. A (redline between Initial Complaint and Amended Complaint). Lopez again

fails to specify which of the myriad text messages and audio recordings he includes in the Amended Complaint form the basis of his claims. Am. Compl. at ¶¶ 31-35. Rule 9(b) requires more than conclusory allegations and pointing to an undefined mass of communications allegedly between two parties. It is an intentionally heightened standard that is meant to "protect [defendants] against baseless charges of fraudulent behavior." *See Cardenas*, 418 F. Supp. 3d at 1098. Plaintiff failed to meet this standard in the Amended Complaint.

In particular, Lopez still fails to plead with the requisite particularity "when" Herro allegedly made the statements that caused Lopez to deposit ETH on Dough. In fact, Lopez does not provide a concrete date for ***a single statement*** he attributes to Herro in the Amended Complaint. Instead, he repeatedly points to statements that Herro allegedly made over a vaguely defined four-to-six-week window in 2024. *See e.g.,* Am. Compl. ¶ 49 ("In the last week of May through the first week of July 2024 . . ."). This is hardly distinguishable from his deficient presentation of dates in the Initial Complaint. *See e.g.,* Initial Compl. ¶ 50 ("In May 2024 . . ."). This lack of particularity is further demonstrated by the images that Lopez added to the Amended Complaint, as ***none of them*** contain a date stamp—even though the medium captured in the images, iMessage, typically includes a date readout.[3] Accordingly, it is not possible to determine, based on the allegations in the Amended Complaint, whether any—or all—of those statements were made ***before*** Lopez deposited funds, or ***after*** he had already deposited funds on Dough. Rule 9(b) requires more.

Similarly, in certain instances, it is not clear what the statement attributed to Herro actually

---

[3] We note that the image on page 9 of the Amended Complaint contains the following date stamp: "Mon, May 20 at 4:42 PM" However, this date stamp comes after the text referenced by Plaintiff and all texts after that date stamp is cropped out of the image. Therefore, the only information that image gives us is that the alleged conversation between Herro and Lopez occurred sometime prior to May 20 at 4:42 PM.

is. For example, throughout the Amended Complaint, Plaintiff cites to a transcript of an audio recording purportedly sent to him by Herro in which Herro supposedly stated the following: "**You have** liquidity at any time, anywhere, always, **because its connected to the chain like their escrow**. The money is locked on the chain where only you can get it out." Am Compl. ¶ 31 (emphasis added). Later in the Amended Complaint however, Plaintiffs cites this "transcript" as saying: "**there is** liquidity at any time, anywhere, always, **because the money is on the chain with escrow**. . . The money is locked on the chain where only you can get it out." Am. Compl. ¶ 80 (emphasis added). Inconsistencies such as these do not comport with the Rule 9(b) requirement that a plaintiff allege "the ***precise*** statements, documents, or misrepresentations made" by a defendant. *Cardenas*, 418 F. Supp. 3d at 1098.

*ii. Plaintiff Fails to Plead Key Elements of His Claims.*

To successfully plead a negligent misrepresentation claim or fraudulent inducement claim consistent with Rule 9(b)'s heightened pleading standard, a plaintiff must establish with factual allegations that: (1) the defendant made a misrepresentation of material fact that he believed to be true but which was in fact false; (2) the defendant was negligent in making the statement because he should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely … on the misrepresentation; and (4) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation." *McGee v. JP Morgan Chase Bank, NA*, 520 F. App'x 829, 831 (11th Cir. 2013) (quoting *Simon v. Celebration Co.,* 883 So.2d 826, 832 (Fla. 5th DCA 2004)). For a claim of fraudulent misrepresentation, Plaintiff must show "consequent injury by the party acting in reliance on the representation." *Butler v. Yusem*, 44 So.3d 102, 105 (Fla. 2010) (emphasis removed); *see Goldstein v. Firer*, No. 1:20-CV-23402-JEM, 2022 WL 17343638, at *6 (S.D. Fla. Nov. 16, 2022), *report and recommendation adopted*, No. 20-23402-CVI, 2022

WL 17344853 (S.D. Fla. Nov. 30, 2022). Plaintiff's claims fail for several reasons.

***First***, Lopez still does not plead facts showing that Herro's alleged statements were false at the time that they were made or facts supporting his allegation that Herro should have known his alleged statements were false. As discussed above, Plaintiff cannot rely on his accusations that Herro orchestrated the "flash loan" attack (and therefore was intentionally lying to Plaintiff) and he otherwise merely asserts that everything Plaintiff said was incorrect. These conclusory allegations are untethered to any well-pleaded facts showing that Herro had any role in the attack or knowledge that any of his statements were false when made and are therefore not entitled to the presumption of truth. *See Iqbal,* 556 U.S. at 681 ("[C]onclusory nature of [those] allegations … disentitles them to a presumption of truth.").

This leaves Lopez relying even more heavily on the "transcript" of the audio recording he allegedly received from Herro—specifically, the statement that "there is liquidity at any time, anywhere, always because the money is on the chain with escrow … [and] locked on the chain where only you can get it out." Am. Compl. ¶¶ 31, 110. Not only is this statement deficient for the reasons discussed above, but this is a statement Lopez already cited extensively in the Initial Complaint and that the Court ***already considered*** (*see* Initial Complaint at ¶ 31, Order at 2). His reliance on this statement in the Amended Complaint is insufficient for the same reasons as it was in the Initial Complaint. Lopez again fails to allege facts showing (1) how anything in this statement was false when it was allegedly made; or (2) that Herro should have known that the statement was false when it was allegedly made. Instead, Lopez merely asserts that this statement was a "false affirmative misrepresentation," and claims that Herro "intentionally lied" and "intentionally misrepresented." Am. Compl. ¶¶ 82, 108, 112. Again, such conclusory allegations are not entitled to the presumption of truth.

***Second,*** Lopez does not plead facts showing that he reasonably relied on the statements allegedly made by Herro (Am. Compl. ¶¶ 31-35) when he was deciding to deposit ETH on Dough, or that Herro made any statement with the intent to induce Lopez to deposit. Lopez's failure to point to the exact dates on which certain statements were made once again dooms his ability to plead reliance successfully. If the statements allegedly made by Herro were made ***after*** Lopez's funds were already on Dough, then, as a matter of law, Lopez could not have relied on Herro's alleged statements because Lopez had already decided to use Dough. *See McGee,* 520 F. App'x at 832 ("Furthermore, since the plaintiffs had already entered into SCC purchase contracts by the time they spoke with Pickard, the complaint notably fails to allege that the plaintiffs could have cancelled their purchase contracts and did not do so because of these representations."); *Douse v. Boston Sci. Corp.*, No. 217CV599FTM38MRM, 2018 WL 3536080, at *2 (M.D. Fla. July 23, 2018). In any event, the Amended Complaint again resorts to conclusory, element-parroting allegations for reliance and an intention to induce reliance which are insufficient. *See* Am. Compl. at ¶¶ 84, 111, 112; *Fernau*, 847 F. App'x at 622 (a plaintiff must "allege with particularity the manner in which they relied on defendants' statements).

***Third***, Lopez's Rule 9(b) claims fail for lack of causation. *See Tardif v. People for Ethical Treatment of Animals*, 829 F. Supp. 2d 1219, 1232 (M.D. Fla. 2011). A Plaintiff bringing a claim for fraud or negligent misrepresentation must show that an "injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation." *McGee*, 520 F. App'x. at 831. An intervening criminal act—such as a hack—disrupts that causal chain. *Dep't of Transp. v. Anglin*, 502 So. 2d 896, 898 (Fla. 1987). Lopez has not adequately pled—nor could he—any factual allegations showing Herro caused or was otherwise involved with the "flash loan" attack. *See* Section III.C., *supra*. As a result, because the "flash loan" attack was the proximate cause of Lopez's alleged

damages, Lopez has not established a claim for fraud or negligent misrepresentation against Herro. *Tardif*, 829 F. Supp. 2d at 1232; *Stahl v. Metro. Dade Cnty.*, 438 So. 2d 14, 21 (Fla. 3d DCA 1983) ("[W]hen reasonable people cannot differ [on proximate cause], the issue has been said to be one of law for the court.").

Accordingly, for the above reasons, Counts I and III should be dismissed with prejudice.

**D. The Breach of Fiduciary Duty Count Should be Dismissed with Prejudice.**

In the Order, the Court dismissed Count II because it was "unclear as to what the breach was, and how the damages … were a foreseeable and natural consequence of that breach." Order at 20. To plead a breach of fiduciary duty claim, a plaintiff must allege "the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002). And to survive a motion to dismiss, the complaint must allege facts that "support a causal connection between the alleged [breach of duty] … and the alleged damages suffered." *Picazio v. Melvin K. Silverman & Associates, P.C.*, 965 F. Supp. 2d 1411, 1415 (S.D. Fla. 2013) (citing to *Bankers Trust Realty, Inc. v. Kluger*, 672 So.2d 897, 898 (Fla. 3d DCA 1996)).

The Amended Complaint attempts to address the Court's previously-identified defect with ***just a single sentence***. It simply re-labels the alleged "breach" as theft, asserting that Herro breached "his fiduciary duties of honesty, loyalty, care and compliance with the applicable securities laws when he siphoned all crypto assets from Dough Finance, including Jonny's, in a purported 'flash loan' attack and utilized said assets to fund a new exchange." Am. Compl. at ¶ 100. As discussed, this conclusory allegation—that Herro siphoned or stole Lopez's assets—is not supported by any well-pleaded facts that would make it plausible. Instead, it asks the Court to accept a sweeping conclusion of intentional misconduct untethered to factual allegations. Because

the Court need not accept as true the allegation that Herro "siphoned" crypto assets from Dough, *see Iqbal*, 556 U.S. at 681, Lopez once again has failed to allege any breach.

The pleading then falls back on the same conclusory causation formulation ("As a proximate cause of the foregoing…") (Am. Compl. at ¶ 101) without alleging any facts that would make proximate cause or foreseeability plausible, thereby repeating the precise defect the Court identified in dismissing Count II. Order at 20. Once again, Lopez never explains how any purported breach—whether arising from Herro's oversight, management, statements, or relationship to Dough—would naturally and foreseeably result in Lopez's loss from a third-party hacker.

The Court should thus dismiss Count II with prejudice.

## IV. CONCLUSION

For the above reasons, the Court should dismiss this case with prejudice.

Dated: January 7, 2026

Respectfully submitted,

**NEIMAN MAYS**
**FLOCH & ALMEIDA, PLLC**

By: /s/ Jeffrey A. Neiman
Jeffrey A. Neiman
Florida Bar No. 544469
Email: jneiman@nmfalawfirm.com
Brandon S. Floch
Florida Bar No. 125218
Email: bfloch@nmfalawfirm.com
Christopher D. Joyce
Florida Bar No. 1020006
Email: cjoyce@nmfalawfirm.com

100 SE 3rd Avenue
Suite 805
Fort Lauderdale, FL 33394

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I certify that on January 7, 2026 a copy of the foregoing was filed on the Court's e-filing system and delivered to all parties of record.

*/s/ Jeffrey A. Neiman*
*Jeffrey A. Neiman*